*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARPER LAND COMPANY, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

JAY C CARLL and WAYNE COUNTY TREASURER,

        Defendants,

and

OUTFRONT MEDIA LLC, formerly known as CBS OUTDOOR INC., and OUTDOOR EQUITIES LLC,

        Defendants/Counterplaintiffs-
        Appellees

UNPUBLISHED
July 17, 2026
10:05 AM

No. 372804
Wayne Circuit Court
LC No. 21-013053-CH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

    Plaintiff/Counterdefendant, Harper Land Company LLC ("HLC"), appeals by right the trial court's partial award of summary disposition to defendants/counterplaintiffs Outfront Media LLC ("Outfront") and Outdoor Equities LLC ("Outdoor"). HLC also challenges the trial court's partial denial of its related motion for reconsideration. We affirm.

## I. BACKGROUND

    This case arises from a dispute over easements for a billboard that burden the real property located at 11001 Hern, Detroit, MI 48213 ("the Property"). Since 2000, Outfront (inclusive of its predecessors-in-interest) has leased the Property to display a billboard. In October 2011, defendant Jay C. Carll purchased the Property from the Michigan Land Bank Fast Track Authority for $6,000. On March 18, 2014, Carll entered into a lease agreement (the "Lease Agreement") with Outfront,

then doing business as CBS Outdoor Inc., for display of a billboard.[1]  Then, in April 2015, Carll entered into an agreement with nonparty 8150 Fulton LLC ("Fulton") that granted to Fulton four perpetual easements over the Property (the "Easement Agreement").  The "Billboard Sign Structure(s) Easement" ("Billboard Easement") granted "[a]n exclusive easement over, under and above" a specified "area of the Property . . . for the purpose of [Fulton] and/or its agents and tenants to construct, install, repair, replace, operate, utilize, lease, and maintain thereon" a billboard.  The "Access Easement" allowed for "ingress and egress over all of the Property . . . for exclusively constructing, reconstructing, erecting, installing, repairing, replacing, relocating, operating, utilizing, leasing, servicing[,] maintaining[,] and removing the Billboard."  The "Utility Easement" allowed for the "installation, operation[,] and maintenance" of utilities that "may be reasonably necessary or appropriate in order to afford adequate illumination of the Billboard."  And the "Visibility Easement" granted "[a]n exclusive easement upon, over and/or across all of the area of the Property . . . to ensure the unobstructed display of advertising on the Billboard to vehicular traffic approaching and passing the Property," with Carll "agree[ing] not to implement or to allow" structures or other items on the Property that cause such obstruction and "not to construct nor allow" any other "advertising sign structures on the Property."

The Easement Agreement provided, among other things, that it "shall be binding upon and inure to the benefit of the parties hereto" and their "successors and assigns"; that it "shall run with the land upon which the Easement is located"; that Fulton "will have the absolute and unconditional right to assign or sublease its rights hereunder at its sole discretion, including the benefits and burdens"; and that "[t]he Easements will run with the land and are imposed on the Property as equitable servitudes in favor of" Fulton.  Among the "Representations and Covenants" that Carll made to Fulton as part of the Easement Agreement was that he "shall pay all taxes and take all other actions necessary to avoid forfeiture of the Property."  Also as part of the Easement Agreement, Carll assigned to Fulton his rights under the Lease Agreement with Outfront.

The Easement Agreement was recorded in the Wayne County Register of Deeds in July 2015.  At some point after conveying the easements, Carll stopped paying property taxes on the Property.  Eventually, the Property was forfeited to defendant Wayne County Treasurer and placed in foreclosure in March 2019, where it went unredeemed.  In July 2019, Fulton assigned its rights under the Easement Agreement and Lease Agreement to Outdoor for $99,000.  A copy of Fulton's assignment of the Easement Agreement was recorded as well.

In September 2019, HLC purchased the Property for $28,000 at auction.  As the property owner, HLC demanded rent payments from Outfront for the display of its billboard.  According to Outfront, it was paying rent to Outdoor at that time but, in response to HLC's demand, it began paying rent to both HLC and Outdoor.  Eventually, Outfront decided to end this arrangement.  It advised HLC that Outdoor's easements survived the tax foreclosure sale and that Outdoor remained the landlord under the Lease Agreement.  Outfront maintained that this made Outdoor

---

[1] In March 2013, between Carll's initial purchase of the Property and the execution of the Lease Agreement, Carll conveyed the Property to nonparty Media Lease Advisors LLC.  The Property was conveyed back to Carll later that year.

the proper recipient of its rent payments, and so Outfront ceased paying rent to HLC and demanded a refund of its past payments. HLC refused, and this litigation ensued.

HLC filed suit against Carll, Outfront, and Outdoor to quiet title and for declaratory relief to extinguish any and all interests under the Lease Agreement and Easement Agreement.[2] HLC also sued Outfront for breach of contract and Outdoor for tortious interference with a business expectancy. Outfront and Outdoor each responded with counterclaims against HLC for quiet title and declaratory relief, with Outfront also alleging unjust enrichment against HLC and Outdoor alleging tortious interference with a business relationship against HLC.[3]

During the litigation, HLC obtained an appraisal of the Property. The appraisal provided three different valuations of the Property. Without the easements but with the billboard lease in place, the Property had a hypothetical market value of $130,000. Without either the lease or the easements, the hypothetical market value of the Property was $20,000. And the appraisal opined that the "as is" market value of the Property with the easements was $0, given that the easements rendered the Property "mostly unusable for development" for other uses and left "abandonment" as the "[t]he highest and best use of the site as is" for its owner.

On June 5, 2021, Outfront moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Outfront argued, in pertinent part, that the easements survived the tax foreclosure sale because they were duly recorded. See MCL 211.78k(5)(e) (providing that "all existing recorded and unrecorded interests in [the foreclosed] property are extinguished, except a visible or recorded easement . . . ."). Therefore, Outfront reasoned, Outdoor remained the easement holder entitled to rent payments under the Lease Agreement. Outdoor concurred with the relief sought in Outfront's motion.

HLC also moved for summary disposition under MCR 2.116(C)(10). As relevant here, HLC argued that the easements were invalid because they were not "true easements" but instead essentially gave the easement holder, Outdoor, an interest in fee simple. Moreover, HLC argued that the easements—which it characterized as easements in gross—violated public policy by rendering the Property valueless. According to HLC, the easements frustrated the purpose of the General Property Tax Act ("GPTA"), MCL 211.1a *et seq.*, which is to "encourag[e] the efficient and expeditious return to productive use of property returned for delinquent taxes." MCL 211.78(1). Since, as HLC's appraisal showed, the easements rendered the Property valueless, enforcement of the Easement Agreement would only place the Property into a perpetual cycle of foreclosure.[4]

---

[2] HLC also named the Wayne County Treasurer as a defendant to this action. This defendant was later dismissed pursuant to a joint stipulation with HLC.

[3] Carll, for his part, did not respond to HLC's complaint, and a default was entered against him on November 12, 2021.

[4] These same arguments were included in HLC's response to Outfront's summary-disposition motion.

Outfront countered that HLC's public-policy arguments cannot override the plain language of MCL 211.78k(5)(e). Furthermore, Outfront asserted that the easements were valid because they were limited to a specific purpose—the construction, operation, and maintenance of a billboard. Nor could HLC escape the plain text of the foreclosure statute by classifying the easements as easements in gross because the statute made no such distinction. Outdoor submitted its own response that echoed many of the same arguments: the easements were valid, survived tax foreclosure, and could not be terminated on public-policy grounds. In its response, Outdoor included a cross-motion for summary disposition under MCR 2.116(I)(2). Neither defendant offered evidence to contradict HLC's appraisal.

After holding two hearings on the motions, the trial court determined that the easements were enforceable and survived the tax foreclosure under MCL 211.78k(5)(e) because they were visible and recorded.[5] The trial court also dismissed the parties' respective claims sounding in contract and tort. Accordingly, the court awarded summary disposition to defendants on their claims for quiet title and declaratory relief and dismissed plaintiff's complaint with prejudice.

HLC moved for reconsideration. It repeated its prior arguments regarding the validity of the easements as well as its public-policy concerns. HLC also posited for the first time that Fulton's assignment of the easements to Outdoor was invalid because easements in gross are only transferable in limited circumstances that were not present in this case. The trial court rejected these arguments. It determined that the easements were easements in gross and, because binding authority stated that commercial easements in gross are assignable, the assignment of the easements in this case was permissible. The trial court then reiterated that the easements survived foreclosure and rejected HLC's public-policy arguments as lacking "support in the law." The court also affirmed its prior dismissal of HLC's tortious-interference claim, but granted reconsideration of its prior dismissal of HLC's breach-of-contract claim because HLC had "presented sufficient evidence to create a genuine issue of material fact with respect to" it.

Following the disposition of its motion for reconsideration, HLC applied for leave to appeal the trial court's interlocutory rulings regarding the assignability and validity of the easements. A panel of this Court denied HLC's application "for failure to persuade the Court of the need for immediate appellate review." *Harper Land Co LLC v Carll*, unpublished order of the Court of Appeals, entered July 1, 2024 (Docket No. 369871). After the trial court later dismissed HLC's breach-of-contract claim, HLC filed this appeal by right.

## II. STANDARDS OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo questions of statutory interpretation. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 577; 983 NW2d 798 (2022).

---

[5] The trial court also determined that the foreclosure terminated the Lease Agreement. Under the Easement Agreement, however, the holder of the easements has the right to enter into a new agreement with a lessee for a billboard upon the Lease Agreement's termination.

-4-

As noted, Outfront moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and Outdoor moved for summary disposition under MCR 2.116(I)(2) in response to HLC's motion under MCR 2.116(C)(10). The trial court did not expressly specify the subrule under which it granted summary disposition to defendants, but the substance of its rulings suggests that it did so under MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and it is "properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cantina Enterprises II, Inc v Property-Owners Ins Co*, 349 Mich App 682, 689; 28 NW3d 800 (2024). All evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion," *id.* at 690, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). A genuine issue of material fact does not exist unless "the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, 350 Mich App 478, 493; 32 NW3d 487 (2024) (citation omitted).[6] When reviewing a motion for summary disposition, the trial court has the authority to grant summary disposition in the nonmoving party's favor under MCR 2.116(I) if the pleadings and supporting proofs demonstrate the nonmoving party's entitlement to that relief. See *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009); MCR 2.116(I)(1)-(2).

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes, or when the trial court makes an error of law." *VHS of Mich, Inc v State Farm Mut Auto Ins*, 337 Mich App 360, 372-373; 976 NW2d 109 (2021) (citation omitted). For reconsideration to be warranted, the movant must show that "(1) the trial court made a palpable error and (2) a different disposition would result from correction of the error." *Luckow Estate v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011), citing MCR 2.119(F)(3).

III. ANALYSIS

The resolution of this appeal rests largely on how the relevant portion of the GPTA applies to the easements at issue. Per MCL 211.78k(5)(e), "all existing recorded and unrecorded interests

---

[6] By contrast, "[a] motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (citation omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160 (citation omitted). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.* (citation omitted). Given that the trial court considered materials beyond the pleadings and any factual disputes arising therefrom in adjudicating the parties' motions for summary disposition, it is apparent that its award of that relief to defendants was not premised on this subrule but instead on MCR 2.116(C)(10). Ultimately, however, the point is of no practical consequence here, as the outcome of HLC's challenges on appeal remains the same regardless of which of these subrules is applied.

in [a foreclosed] property are extinguished, except a visible or recorded easement . . . ." Both on appeal and below, HLC has made clear that it does not directly challenge the validity of MCL 211.78k(5)(e). Nor does it dispute that the easements at issue in this case were "visible or recorded" as required by that statutory provision. Rather, HLC argues that the easements at issue are beyond the statute's scope and otherwise invalid because (1) they are not "true easements," (2) they could not be assigned by Fulton to Outdoor and are thus now void, and (3) they violate public policy. HLC has failed to show grounds for reversal in these arguments.

## A. TRUE EASEMENTS

We start with HLC's argument that the easements conveyed in the Easement Agreement are not "true easements," and thus "cannot be the type of easement the Legislature intended to survive a tax foreclosure under MCL 211.78k(5)(e)," because they effectively grant Outdoor a fee simple interest in the Property.

At the outset, we note that the Legislature did not specifically define the term "easement" as used in MCL 211.78k(5)(e), and none of the parties suggests that the term should be construed to mean anything other than what is provided by the established law of our state regarding easements. See *Belcher v Ford Motor Co*, 333 Mich App 717, 722-723; 963 NW2d 423 (2020) (explaining that, "[u]nless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used," and that "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning") (quotation marks and citations omitted).

"An easement is a limited property interest; it is the right to use the land burdened by the easement for a specific purpose." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (citation omitted). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald v Brule*, 225 Mich App 26, 35; 570 NW2d 788 (1997) (citation omitted); see also *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 41; 700 NW2d 364 (2005) ("[W]hile the easement holder's rights are ultimately paramount to those of the owner of the soil, the latter's rights are subordinate only to the extent stated in the easement grant.") (cleaned up). Accordingly, "the use of the easement must be confined strictly to the purposes for which it was granted or reserved." *Blackhawk*, 473 Mich at 41 (cleaned up). Our Supreme Court has also made clear that

> [i]t is an established principle that the conveyance of an easement gives to the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement. And the use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land. [*Id.* at 41-42 (cleaned up).]

An easement holder therefore cannot "make improvements to the servient estate [i.e., the land burdened by the easement] if such improvements are unnecessary for the effective use of the

easement or they unreasonably burden the servient tenement." *Maniaci v Diroff*, 505 Mich 1, 3; 940 NW2d 55 (2019) (quotation marks and citation omitted).

To determine the proper scope of an easement, we look to the text of the conveyance that granted it. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003); *Blackhawk*, 473 Mich at 42. "Only where the language in the granting instrument is ambiguous may this Court examine evidence extrinsic to the document to determine the meaning within it." *Blackhawk*, 473 Mich at 42., citing *Little*, 468 Mich at 700.

According to HLC, the easements at issue are not "true easements" because they "are not a limited interest to use the Property." Under the settled principles summarized above, we cannot agree. The plain terms of the Easement Agreement make clear that the easements it conveys are designed for and limited to a single, "specific purpose": the use of a billboard. *Smith*, 331 Mich App at 215. The Billboard Easement allows the easement holder to "construct, install, repair, replace, operate, utilize, lease, and maintain" a billboard on the allotted area of the Property. The Access Easement, Utility Easement, and Visibility Easement—described *supra*—all facilitate actions needed for the operation and maintenance of the billboard, and the rights they expressly afford Outdoor in that regard comport with the fundamental principle that Outdoor, as the holder of the Billboard Easement, has "all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." *Blackhawk*, 473 Mich at 41-42. While the easements may collectively grant Outdoor extensive rights to use the Property, that use is strictly limited to operation of a billboard, and those rights do not go so far as to, for instance, afford Outdoor exclusive possession of the Property. Such limitations belie HLC's position that Outdoor has the equivalent of a fee simple interest in the Property and thus something other than an "easement" under MCL 211.78k(5)(e). See *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 348; 820 NW2d 242 (2012) (explaining that "[a] person having all possible rights incident to ownership of a parcel of property has the entire bundle of sticks or a fee simple title to the property," including "the right to exclusive possession") (citation omitted).[7]

---

[7] We note that certain of the easements granted by the Easement Agreement are expressly "exclusive." An exclusive easement is one that "conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others." *Penrose v McCullough*, 308 Mich App 145, 152; 862 NW2d 674 (2014) (quotation marks and citation omitted). Though disfavored, an exclusive easement can be created if the parties agree to do so. *Id.* Here, it is clear from the express terms of the Easement Agreement that its parties did so agree. And as discussed, the easements restrict Outdoor's use of the Property to the specific purpose of a billboard and do not convey to Outdoor the full complement of rights that would be incident to ownership of the Property. See *id.* at 149, 152 (enforcing interest described as an "exclusive perpetual easement" over certain land "for parking, storage, a right of way, and for sanitary and other sewer and water line and other utilities") (emphasis omitted); see also *id.* at 151-152 (noting "that an exclusive easement . . . has been said to amount to *almost* a conveyance of the fee") (emphasis added). HLC has offered no basis in this case to conclude that these easements have lost their character as such or are otherwise invalid simply by dint of their exclusivity.

Pointing to its uncontested appraisal, HLC stresses that the burden the easements place on the Property renders the Property valueless to its owner. HLC, however, offers no legal authority to support the notion that such an impact on the value of the Property would inherently mean that the easements are not, in fact, easements under the law. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (noting that when "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned") (quotation marks and citation omitted). As discussed, the law requires Outdoor, as the holder of the easements, to "confine[]" its use of them "strictly to the purposes for which [they were] granted or reserved," *Blackhawk*, 473 Mich at 41 (cleaned up); to do so "with as little burden as possible to" HLC as "the fee owner of" the Property, *id.* at 41-42 (cleaned up); and to not make "improvements" to the Property that "are unnecessary for the effective use of the easement[s]" or that "unreasonably burden" the Property, *Maniaci*, 505 Mich at 3. But these principles all function to ensure that the easement holder acts within the proper scope of the granted easement and its imposed burden; none of them purports to categorically limit the extent of burden that an easement, otherwise duly granted and used for a specific purpose, may impose. See, e.g., *Schadewald*, 225 Mich App at 37 (explaining that "the servient estate is not to be burdened *to a greater extent than was contemplated at the time of the creation of the easement*") (quoting *Barbaresos v Casaszar*, 325 Mich 1, 8; 37 NW2d 689 (1949)) (cleaned up and emphasis added); *Smith v Edwards*, 249 Mich App 199, 210; 645 NW2d 304 (2002) (recognizing that, to satisfy the "unreasonable burden" inquiry, there must be some showing that the activity on the servient estate "is inconsistent with or impairs the *initial* easement*") (emphasis added).

Neither below nor on appeal has HLC argued that Outdoor's use of the Property is beyond or inconsistent with the scope of the Easement Agreement; rather, HLC's issue is with the Easement Agreement itself and the extent of its burdens on the Property. HLC has not shown, however, that the Agreement's easements, burdensome as they may be, do not constitute (in HLC's words) "true easements" such that they would not survive foreclosure under MCL 211.78k(5)(e).

## B. ASSIGNMENT OF EASEMENTS

Next, HLC argues that, even if the easements are "true easements," they were rendered void when Fulton assigned its rights under the Easement Agreement to Outdoor. Because the easements are easements in gross, HLC reasons, they are only assignable under limited circumstances that are not present in this case—which in turn means that they did not survive Fulton's attempted assignment of them to Outdoor.

As an initial matter, we note that HLC did not raise this argument below until its motion for reconsideration. "When an issue is first presented in a motion for reconsideration, it is not properly preserved." *Compagner v Burch*, 347 Mich App 190, 211; 14 NW3d 794 (2023) (quotation marks and citation omitted). Nonetheless, the trial court opted to address the issue on its merits, and furthermore, this Court can "overlook preservation requirements" if, among other things, consideration of the unpreserved issue "is necessary for a proper determination of the case." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023) (quotation marks and citation omitted); see also *Dep't of Health & Human Servs v NRK RX, Inc*, ___ Mich ___, ___; ___ NW3d ___ (2026) (Docket No. 167917); slip op at 8 n 5. Given the circumstances, we will address the merits of this issue despite HLC's failure to properly preserve it below.

-8-

Generally, "Michigan courts recognize two types of easements: easements appurtenant and easements in gross." *Penrose v McCullough*, 308 Mich App 145, 148; 862 NW2d 674 (2014) (citation omitted). Put simply, an easement appurtenant is "created to benefit another tract of land" with its use "being incident to the ownership of that other tract." *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378 n 40; 699 NW2d 272 (2005) (quotation marks and citation omitted). Conversely, an easement in gross "benefit[s] a particular person and not a particular piece of land." *Id.* at 379 n 41 (quotation marks and citation omitted). " '[A]n easement will never be presumed to be a mere personal right where it can fairly be construed to be appurtenant to some other estate.' " *Penrose*, 308 Mich App at 148, quoting *von Medling v Strahl*, 319 Mich 598, 610; 30 NW2d 363 (1948). If the nature of the easement is in dispute, the issue "may be determined by the relation of the easement to the so-called dominant estate, or the absence of it, and in the light of all the circumstances under which the grant was made." *Smith v Dennedy*, 224 Mich 378, 382; 194 NW 998 (1923) (quotation marks and citation omitted).

Like the trial court, we disagree with defendants that the easements at issue are appurtenant rather than in gross. There is nothing to indicate that the easements were created to benefit, or that their use is incident to the ownership of, some other tract of property; instead, the easements only benefit whoever may hold them. See *Dep't of Natural Resources*, 472 Mich at 378 n 40, 379 n 41; *Dennedy*, 224 Mich at 382; see also *Mumaugh v Diamond Lake Area Cable TV Co*, 183 Mich App 597, 607; 456 NW2d 425 (1990) ("The easement at issue is an easement in gross because it is not appurtenant to any estate in land, but is a personal interest granted to I & M to use [the] plaintiffs' land for the erection and maintenance of a utility pole line."). Defendants stress that, under the express terms of the Easement Agreement, the easements "run with the land." But as is clear from the Easement Agreement's language, "the land" referenced is the Property, and the language simply reflects the intention of the Easement Agreement's parties that future owners of the Property, such as HLC, "will be bound by" the easements if they "purchase[] the [Property] with actual or constructive notice of" the easements. *Conlin v Upton*, 313 Mich App 243, 260; 881 NW2d 511 (2015) (citation omitted). While this Court has described language of this sort as "a trait of an easement appurtenant," *Penrose*, 308 Mich App at 149, defendants have offered, and we have found, no authority to suggest that an easement in gross cannot also be said to "run with the land" that it burdens, or that the presence of such language means that the easement is somehow appurtenant even though there is no dominant estate benefited by it.

While we thus agree with HLC that the easements at issue are in gross, we disagree that they could not survive Fulton's assignment of them to Outdoor. "Michigan caselaw generally dictates that easements in gross, if of a commercial character, are alienable property interests and thus assignable." *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 271; 739 NW2d 373 (2007); see also *Johnston v Mich Consol Gas Co*, 337 Mich 572, 582; 60 NW2d 464 (1953) ("Easements in gross, if of a commercial character, are alienable property interests.") (quotation marks and citation omitted); *Mumaugh*, 183 Mich App at 607 ("[E]asements in gross which are commercial in nature, such as easements for pipelines, telephone and telegraph lines, and railroads, are generally assignable.") (citation omitted). HLC does not dispute that the easements at issue are commercial in nature. Instead, invoking language from our Supreme Court's decision in *Johnston*, 337 Mich at 580, HLC posits that the assignment of easements in gross is only permissible if they are "for pipe lines, telephone and telegraph lines and railroads." We do not read *Johnston*, however, to suggest, let alone require, such a categorical limitation on the

-9-

assignability of commercial easements in gross.[8] Nor has HLC identified caselaw from our state that has affirmatively imposed or enforced such a limitation; instead, as reflected above, that caselaw speaks of assignability of commercial easements in general terms.[9] Accordingly, HLC has failed to demonstrate that the easements at issue are invalid or have been rendered void by virtue of their assignment from Fulton to Outdoor.

## C. PUBLIC POLICY

We turn last to the heart of HLC's position on appeal: that the easements at issue are violative of public policy and should be declared invalid for that reason. In support of this argument, HLC relies on the Legislature's prefatory finding in the GPTA that "that there exists in this state a continuing need to strengthen and revitalize the economy of this state and its municipalities by encouraging the efficient and expeditious return to productive use of property returned for delinquent taxes." MCL 211.78(1). According to HLC, the easements at issue render the Property valueless to its owner and bar the owner from any possible productive use of it. As a result, any owner of the Property will cease to pay property taxes, just as Carll did previously, resulting in a perpetual cycle of foreclosure that effectively removes the Property from the state and municipal tax bases while allowing the easement holder to use the Property essentially as its owner, but tax-free. Since such a scheme frustrates the purpose of the GPTA, HLC urges this Court to invalidate the easements.

HLC's position rests on the judiciary's "duty to refuse to enforce a contract that is contrary to public policy." *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, 511 Mich 89, 101; 999 NW2d 8 (2023) (quotation marks and citation omitted). To invalidate a contract based on public policy, such policy must be "clearly rooted in the law"; that is, "there must be definite indications in the law of the sovereign to justify the invalidation of a contract as contrary to public policy." *Id.* (cleaned up). "In identifying the boundaries of public policy," we look to "the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002).

According to HLC, the GPTA's expressly stated purpose in MCL 211.78(1) provides the "definite indication[]" that the easements are contrary to public policy and should be invalidated.

---

[8] Indeed, that list is not even fully reflective of the authority the *Johnston* Court itself relied on—namely, *Hall v City of Ionia*, 38 Mich 493 (1878), which "held that the right in gross to take water from a stream was assignable[.]" *Johnston*, 337 Mich at 581-582.

[9] HLC's position is also at odds with the apparent trend among American courts finding that commercial easements in gross are alienable. See Restatement Property, 3d, Servitudes, § 4.6(1)(c), comment b ("American courts have long carved out an exception for profits and easements in gross that serve commercial purposes. Under the rule stated in this section, the exception has now become the rule."); Bruce, Ely, Jr., & Brading, The Law of Easements & Licenses (March 2026 Update), § 9:5 ("[T]he modern American view is that commercial easements in gross are freely alienable as a matter of law, unless the instrument of creation provides to the contrary.").

*Soaring Pine*, 511 Mich at 101. In that very same statute, however, the Legislature made clear its decision to except "visible or recorded easement[s]" from termination upon foreclosure. MCL 211.78k(5)(e). As is well settled, the statutory text is the best indicator of the Legislature's intent. See *Belcher*, 333 Mich App at 722. And when interpreting a statute, we must "enforce the statute as written" and ensure that "every word" is "given meaning." *Id.* (quotation marks and citations omitted). And we "may not look to the statute's purpose or its public-policy objectives unless the statutory language is ambiguous or unclear." *People v Morrison*, 328 Mich App 647, 651; 939 NW2d 728 (2019) (citation omitted).

While the general intent of the GPTA may be for the expeditious return of delinquent property to productive use, the plain text of MCL 211.78k(5)(e) tells us that the Legislature concluded that the GPTA's underlying purposes are best effectuated by excepting visible or recorded easements from termination upon foreclosure. And as discussed, HLC has failed to demonstrate that the easements at issue fall outside of that plainly stated exception and the legislative policy judgment it reflects.[10] That is by no means to say that the policy concerns underlying HLC's argument and illustrated by the facts of this case are unfounded or unworthy of attention from our Legislature; to the contrary, it is not hard to see the potential problems with and broader detriment from the arrangement secured by defendants through the easements at issue.[11] But because HLC has not shown that its public-policy arguments are "clearly rooted in the law," *Soaring Pine*, 511 Mich at 101 (cleaned up), they do not provide HLC a path to relief in this case.

IV. CONCLUSION

---

[10] We note that, although HLC maintains it does not challenge the validity of MCL 211.78k(5)(e), its arguments—namely, its urging that we consider the practical consequences of defendants' position—could be taken to invoke the absurd-results canon of statutory construction. This canon, however, does not permit this Court to ignore or rewrite plain statutory text simply because HLC cannot see any "logical basis to conclude that the Legislature intended" what HLC deems to be an unpalatable result. *Johnson v Recca*, 492 Mich 169, 194; 821 NW2d 520 (2012). While HLC may fairly question the legislative judgment reflected by MCL 211.78k(5)(e)'s plain terms, HLC has not shown that it is "quite impossible that the Legislature could have intended" to except visible or recorded easements from termination upon foreclosure without seeing fit to try to limit that exception so as not to reach easements of the sort at issue here. *Id.* (quotation marks omitted).

[11] To bolster its position, HLC directs us to consider an amicus brief the Michigan Department of Treasury filed in another case, *Saginaw Co Land Bank Auth v Vremya Holdings, LLC*, unpublished opinion of the Court of Appeals, issued June 21, 2011 (Docket No 293785), which raises many of the same public-policy arguments advanced by HLC here. That amicus brief, however, was not filed in this case—nor, for that matter, has any other such brief been filed in this case, by the Department of Treasury or any other party. We thus fail to see how our consideration of the *Vremya* amicus brief in this case would be proper. See generally MCR 7.212(H). We also note that, while HLC relies on the unpublished *Vremya* decision itself, we do not find any instructive or persuasive value in it; although the case involved similar facts and public-policy arguments, neither the trial court nor this Court reached those arguments in disposing of the case.

-11-

Based on the arguments presented to this Court, HLC has not shown that it is entitled to relief on appeal.  Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani